

SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: July 10, 2014

**The Order of the Court is set forth below. The docket reflects the date entered.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

BOBBIE J. MARTIN,           CASE NO. 13-02091-NPO

DEBTOR.                CHAPTER 13

COUNTRY CREDIT, LLC            PLAINTIFF

VS.             ADV. PROC. NO. 13-00090-NPO

BOBBIE J. MARTIN            DEFENDANT

**MEMORANDUM OPINION AND ORDER ON AMENDED
COMPLAINT TO DETERMINE THE DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C. § 523 AND FOR OTHER RELIEF**

This matter came before the Court for trial on May 28, 2014 (the "Trial") on the

Amended Complaint to Determine the Dischargeability of Debt Pursuant to 11 U.S.C. § 523 and

for Other Relief (the "Complaint") (Adv. Dkt. 14)[1] filed by Country Credit, LLC ("Country Credit") and the Response to Amended Complaint to Determine the Dischargeability of Debt Pursuant to 11 U.S.C. § 523 and for Other Relief (the "Response") (Adv. Dkt. 15) filed by the debtor, Bobbie J. Martin (the "Debtor"), in the Adversary.  The Pretrial Order (Adv. Dkt. 23) was entered on May 15, 2014.  The Debtor filed the Defendants' [sic] Findings of Fact (Adv. Dkt. 25) on May 27, 2014.  On that same day, Country Credit filed the Plaintiff's Findings of Fact (Adv. Dkt. 26).

At Trial, John S. Simpson ("Simpson") and Stacy Moore Buchanan represented Country Credit, and Tylvester O. Goss represented the Debtor.  During Trial, Country Credit introduced into evidence seventeen (17) exhibits, and the Debtor introduced into evidence nine (9) exhibits.[2] Country Credit presented the testimony of three (3) witnesses: (1) Misty King ("M. King"), the office manager of Country Credit; (2) Charlotte King ("C. King"), a customer service representative of Country Credit; and (3) Stephen Binning, a member of Country Credit.  The Debtor presented only his own testimony.

After Trial, the parties requested and received permission to file post-trial briefs.  On June 18, 2014, the Debtor filed the Brief of Defendant — Bobby J. Martin (the "Debtor Brief")

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. _____)"; and (2) citations to docket entries in the main bankruptcy case, Case No. 13-02091-NPO, are cited as "(Bankr. Dkt. _____)".

[2] Hereinafter, exhibits introduced into evidence at Trial by the Debtor are cited as "(Debtor Ex. _____)", and exhibits introduced into evidence at Trial by Country Credit are cited as "(Country Credit Ex. _____)".  The parties stipulated to the admission of all of the exhibits at Trial, with the sole exception of Country Credit's exhibit 17, which was admitted into evidence at Trial without objection.

(Adv. Dkt. 29), and Country Credit filed a brief in the form of a one-page letter (the "Country Credit Brief") (Adv. Dkt. 30).

At issue in the Adversary is whether the Debtor made misrepresentations or omissions to Country Credit within the meaning of 11 U.S.C. § 523(a)(2)(A) or (B)[3] that would render his indebtedness to Country Credit nondischargeable. The Court, having considered the pleadings, evidence, and arguments of counsel, finds that Country Credit has not met its burden of proving the elements required for nondischargeability for the reasons that follow.

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Notice of the Trial was proper under the circumstances.

## Facts[4]

1. On September 18, 2012, the Debtor contacted Country Credit to apply for a loan.

2. Based upon information provided by the Debtor over the telephone, C. King completed an application form (the "Application") (Country Credit Ex. 2) and budget form (the "Budget") (Country Credit Ex. 3). Then, M. King, no relation to C. King, called the Debtor to

---

[3] Before and during Trial, Country Credit argued that the Debtor made a misrepresentation under 11 U.S.C. § 523(a)(2)(A) by claiming that he had no dependents when in fact he has six (6) children. Country Credit, however, abandoned this argument in the Country Credit Brief, conceding that all of the Debtor's alleged misrepresentations "respected the debtor's financial condition." Notwithstanding this post-trial concession, an overview of Country Credit's 11 U.S.C. § 523(a)(2)(A) claim is included in this Opinion.

[4] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

verify the accuracy of the information in the Budget.[5]  M. King, however, testified at Trial that she did not "independently recollect" this particular conversation or loan closing[6] but that she usually called loan applicants for this purpose.

3.      On September 19, 2012, the Debtor signed the completed Application in person at Country Credit's office in Brookhaven, Mississippi.  The Debtor also signed other documents related to the loan, including:  (1) Disclosure Statement, Promissory Note, and Security Agreement (Country Credit Ex. 1); (2) Budget; (3) Loan Application Addendum (the "Addendum") (Country Credit Ex. 4); and (4) signature page (the "Signature Page") (Country Credit Ex. 5).  After signing these documents, the Debtor received a loan in the principal amount of $1,869.95 (the "Loan") at an interest rate of 43.33 percent (43.33%).

4.      The Debtor did not disclose during his telephone conversations with C. King and M. King or in the Loan documents that he had "dependents" or "child-support obligations."[7]  Later at Trial, the Debtor testified that he had six (6) children and paid child support for five (5) of his children.

5.      On July 8, 2013, the Debtor filed a voluntary petition for relief under chapter 13 of the U.S. Bankruptcy Code. (Bankr. Dkt. 1).

---

[5] Test. of M. King at 8:31:10 – 8:31:50.  The Trial was not transcribed.  References to the testimony presented at Trial are cited by the timestamp of the audio recording.

[6] *Id.* at 8:17:10 – 8:17:50.

[7] Test. of Debtor at 10:16:50 – 10:17:00.

6.      On February 10, 2014, Country Credit filed the Complaint seeking a declaration that the debt attributable to the Loan is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) or (B).[8]  The Debtor filed his Response on March 5, 2014.

## Discussion

Usually, "all debts arising prior to the filing of the bankruptcy petition will be discharged." *United States v. Coney*, 689 F.3d 365, 371 (5th Cir. 2012) (citing *In re Bruner*, 55 F.3d 195, 197 (5th Cir. 1995)).  Although this is the general rule, "Congress has provided that certain types of liabilities are excepted from the general rule of discharge" in order to "ensure that the Bankruptcy Code's 'fresh start' policy is only available to 'honest but unfortunate debtor[s].'" *Id.* (citations omitted).

In its Complaint, Country Credit seeks a finding of nondischargeability of the Loan debt based on § 523(a)(2)(A) or (B). Section 523(a)(2)(A) covers oral misrepresentations or omissions and excepts from discharge a debt:

> (2)      for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A)      false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).  Section 523(a)(2)(B) covers written statements and excepts from discharge a debt:

> (2)      for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (B)      use of a statement in writing—
> >
> > > i.      that is materially false;

---

[8] Hereinafter, all code sections refer to the U.S. Bankruptcy Code (the "Code") found at Title 11 of the United States Code, unless otherwise noted.

      ii.     respecting the debtor's or an insider's financial condition;

      iii.     on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

      iv.     that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

With respect to both § 523(a)(2)(A) and § 523(a)(2)(B), "the creditor must prove by a preponderance of the evidence that the debt is nondischargeable." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). Moreover, "exceptions to discharge must be strictly construed against the creditor and liberally construed in favor of the debtor." *Country Credit, LLC v. Kornegay (In re Kornegay)*, Adv. No. 11-00042-KMS, 2012 WL 930818, at *3 (Bankr. S.D. Miss. Mar. 19, 2012) (citing *Lanier v. Futch (In re Futch),* Adv. No. 09–00144–NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011)); *see Mammel v. Pierce (In re Pierce),* Adv. No. 10–3408, 2011 WL 2312037, at *1 (Bankr. N.D. Tex. June 10, 2011); *Fezler v. Davis (In re Davis),* 194 F.3d 570, 573 (5th Cir. 1999); *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 107 F.3d 355, 356 (5th Cir. 1997); *Jordan v. Se. Nat'l Bank (In re Jordan),* 927 F.2d 221, 224 (5th Cir. 1991) (rationale of reading nondischargeability provisions narrowly "is to help preserve the Code's basic policy of giving an honest debtor a fresh start"), *overruled in part by Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257 (5th Cir. 1993).

**A.    Country Credit has withdrawn its claim under § 523(a)(2)(A).**

After Trial, Country Credit withdrew its claim under § 523(a)(2)(A). For the sake of completeness, the Court briefly addresses two of Country Credit's arguments made at Trial in support of its now-abandoned claim.

### 1.    Dependents

At Trial, Country Credit argued that the basis for its claim under § 523(a)(2)(A) was the Debtor's purported misrepresentation in the Application that he did not have any dependents when, in fact, he had six (6) dependents.[9]  According to Country Credit, the Loan would not have been approved if the Debtor had been truthful.  Country Credit pointed out that the Debtor contradicted himself when he later listed six (6) dependents on Schedule I— Current Income of Individual Debtor(s) of his bankruptcy schedules ("Schedule I") (Country Credit Ex. 10; Adv. Dkt. 4 at 19).

The Debtor's representation that he had no dependents, however, was consistent with the information he provided in the tax returns.  The Debtor claimed no dependents on his tax returns in 2011 (Debtor Ex. 7) and 2012 (Debtor Ex. 5).  These years, respectively, are the year before, and the year of the Application.  The Debtor's tax returns in this regard apparently complied with the provision in the Internal Revenue Code that "[i]f the parents claiming any qualifying child do not file a joint return together, such child shall be treated as the qualifying child . . . of the parent with whom the child resided for the longest period of time during the taxable year."  26 U.S.C. § 152(c)(4)(B).

By relying on the alleged inconsistency between Schedule I and the Application, Country Credit confused the definition of a dependent in tax law as opposed to the definition in the Code. The difference between these definitions is explained in a leading bankruptcy treatise: "While it is true that not all obligees on alimony or support obligations are dependents of the debtor for tax purposes, the term 'dependent' in this section has been given a broader construction to include any person who depends on financial support from the debtor."  COLLIER FAMILY LAW AND THE

---

[9] Simpson's Opening Statement at 8:06:30 – 8:08:30.

BANKRUPTCY CODE ¶ 8.03[2][b] (2013).  This statement clarifies why it was not inconsistent *per se* for the Debtor to list his children as dependents on Schedule I but not on the Application.

### 2.   Financial Condition

Even assuming the Debtor misrepresented the number of his dependents in the Application, his statement would fall under § 523(a)(2)(A) only if it was one "other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  The burden fell on Country Credit to "prove by a preponderance of the evidence that the debt is nondischargeable."  *RecoverEdge L.P.*, 44 F.3d at 1292 (citing *Grogan*, 498 U.S. at 286).  It follows then that Country Credit had burden of proving by a preponderance of the evidence that the Debtor's alleged misrepresentation — that he did not have any dependents — was unrelated to his financial condition.

At Trial, Simpson stated that the issue of whether dependents affects a debtor's financial condition "could go both ways" and that he himself has "four children" that "certainly affect my financial condition."[10]  Regardless of Simpson's equivocation at Trial on this issue, Country Credit abandoned its claim under § 523(a)(2)(A) after Trial in the Country Credit Brief where it agreed that the alleged misrepresentation related to the Debtor's financial condition.

### B.   Country Credit has not met its burden of proof under § 523(a)(2)(B).

### 1.   Dependents

This argument does not warrant much analysis as the Court already has noted that the Debtor made no misrepresentation regarding his dependents because:  (1) he had no dependents for tax purposes; (2) Country Credit did not provide a definition of "dependents" contrary to the definition used for tax purposes; and (3) the Debtor signed the Application before completing

---

[10] *Id.* at 8:10:30 − 8:10:50.

Schedule I.  Without the element of a written statement "that is materially false," there can be no basis for the Court to declare the Loan debt nondischargeable under § 523(a)(2)(B).  Therefore, it is unnecessary for the Court to discuss the other elements of § 523(a)(2)(B) as they relate to the Debtor's statement about "dependents."

### 2.     Domestic Support & Child Support

Country Credit alleges that the Debtor made written misrepresentations under § 523(a)(2)(B) by stating that he did not owe domestic support in the Budget and Addendum and he did not owe child support in the Addendum.  Additionally, Country Credit points to the Signature Page, which provides that the Application "includes all . . . debt including but not limited to . . . child support."  The Debtor did not dispute at Trial that he had child-support obligations of approximately $840.66 per month, as well as a child-support arrearage of $15,454.41 when he signed the Loan documents.

To prevail under § 523(a)(2)(B), Country Credit had to prove by a preponderance of the evidence that: (1) a statement in writing exists; (2) the writing is materially false; (3) the writing concerns the Debtor's financial condition; (4) Country Credit  reasonably relied on the statement when it approved the Loan; and (5) the Debtor made or published the statement with the intent to deceive Country Credit.  *G.M.A.C. Fin. Servs. v. Harris (In re Harris)*, Adv. Proc. No. 04-01097-NPO, at *10 (Bankr. N.D. Miss. Aug. 3, 2007) (citing *Byrd v. Bank of Miss.*, 207 B.R. 131, 134 (S.D. Miss. 1997)).  Because the Debtor did not dispute that he signed the Loan documents submitted by Country Credit, the Court will limit its discussion to the last four elements of § 523(a)(2)(B).

### a.    Is the writing materially false?

According to the Fifth Circuit, "a materially false statement is one that 'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'"  *Byrd*, 207 B.R. at 136 (citing *Jordan*, 927 F.2d at 224).  "It is well established that writings with pertinent omissions *may* qualify as 'materially false' for purposes of § 523(a)(2)(B)."  *Jordan*, 927 F.2d at 224 (citation omitted) (emphasis added).  The question here is one of materiality, not falsity.

Country Credit presented extensive testimony from M. King and C. King.  M. King explained that had she known about the Debtor's child-support obligations she would not have given her "preliminary approval" of the Loan because the Debtor would not have been able to afford his Loan payments.[11]  C. King similarly testified that she would have rejected the Loan had she known of the Debtor's child-support obligations because he would have been "negative in the budget" and would have had "no disposable income."[12]

The Budget supports their testimony.  The Debtor's monthly net disposable income, including his Loan payment, was only $488.62, whereas his monthly child-support obligations totaled approximately $840.00.  Had the child-support obligations been included in the Budget, the Debtor's monthly net disposable income would have been ($351.38).  This shortfall in the Budget shows that Country Credit "would not have extended the loan" had they known about the Debtor's child-support obligations.  *Country Credit, LLC v. Johnson (In re Johnson)*, Adv. Proc. 11-00084-KMS, 2012 WL 930845, at *4 (Bankr. S.D. Miss. Mar. 19, 2012).  Based on the negative disposable income and the consistency in the testimony of the witnesses, the Court finds that Country Credit has met its burden of proving the element of material falsity.

---

[11] Test. of M. King at 8:39:55 – 8:40:25.

[12] Test. of C. King at 9:15:30 – 9:15:55.

**b.    Does the writing concern the Debtor's financial condition?**

The Fifth Circuit Court of Appeals has explained that the term "financial condition" in § 523(a)(2) is "meant to embody terms commonly understood in commercial usage rather than a broadly descriptive phrase intended to capture any and all misrepresentations that pertain in some way to specific assets or liabilities of the debtor." *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 676 (5th Cir. 2012). The term "means the general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities." *Id.* The issue before the Fifth Circuit in *Bandi* was whether "a representation that one owns a particular residence or . . . property" related to financial condition. *Id.* The *Bandi* Court found that it did not, because ownership of property "says nothing about the overall financial condition of the person making the representation or the *ability to repay debt*." *Id.* (emphasis added).

Applying *Bandi*, a bankruptcy court in this judicial district has held that a credit application "relates to . . . financial condition." *Gulf Coast Cmty. Fed. Credit Union v. Whorton (In re Whorton)*, Adv. Proc. 12-05044-KMS, 2014 WL 201352, at *5 (Bankr. S.D. Miss. Jan. 16, 2014). The Court finds this holding instructive because like a credit application, a loan application determines the applicant's "ability to repay debt." *Bandi*, 683 F.3d at 676. M. King testified that it was her job to make decisions on whether applicants could meet their loan obligations.[13] Indeed, the information Country Credit obtained from applicants directly and from its independent research, supports M. King's testimony. The Court finds that the information provided by the Debtor in the Loan documents related to "overall financial condition" because it reflected the Debtor's "overall value of property and income as compared to debt and liabilities."

---

[13] Test. of M. King at 8:34:45 – 8:35:00.

*Id.* Accordingly, the Court further finds that Country Credit has met its burden of proving that the Loan documents concerned the Debtor's financial condition.

### c.   Did Country Credit reasonably rely on the statement?

"The Fifth Circuit has held that reasonableness of reliance under § 523(a)(2)(B) is a factual determination to be made in light of the totality of the circumstances." *Johnson*, 2012 WL 930845, at *4 (citing *Coston,* 991 F.2d at 261).

> The bankruptcy court may consider, among other things:  whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Coston*, 991 F.2d at 261 (citation omitted).  There is no evidence of any previous business dealings between Country Credit and the Debtor, nor does it appear that any "red flags" existed at the time the Debtor obtained the Loan that would have alerted Country Credit to verify the accuracy of any information provided by the Debtor.  The issue then is whether a minimal investigation by Country Credit might have revealed the inaccuracy of the Debtor's representations.  If so, then Country Credit's reliance on the Loan documents was not reasonable.

C. King testified that she contacted the Debtor's employer, Schneider National Carriers Inc. ("Schneider"), to verify his employment.[14]  C. King could have asked Schneider about garnishments and child-support obligations at the same time she verified his employment.  She also could have asked the Debtor to sign an authorization permitting it to obtain salary

---

[14] Test. of C. King at 9:09:20 – 9:09:40.

information directly from Schneider.  Moreover, M. King could have asked the Debtor for copies of more than one (1) check stub from the same month to uncover all deductions.[15]

Regarding the deductions, the Debtor provided his pay stub dated September 14, 2012 (Country Credit Ex. 17).  The pay date on the stub was only five (5) days before the Debtor signed the Application.  Thus, the Debtor complied with Country Credit's request to provide his most recent check stub.  At Trial, Country Credit made much of the fact that the check stub provided by the Debtor was a "free check," defined by the Debtor as a check that did not show any amount deducted for child support.[16]  But Country Credit likely had seen "free checks" in dealings with other borrowers.  As M. King stated in her testimony, "there is nothing stopping us" from getting more than one (1) check to clarify the discrepancy.[17]

Although there were clearly other steps that could have been taken by Country Credit to uncover the child-support obligations, the Court finds that such actions would have risen well above a "minimal investigation."  This Court thus concludes that Country Credit gathered sufficient information and did not have a readily available source from which it could have discovered the Debtor's child-support obligations.  Country Credit's reliance on the Budget, Addendum, and Signature Page, therefore, was reasonable.

The Debtor alleged that Country Credit did not satisfy the element of reasonable reliance because of the timing of the Loan approval.  In the Debtor Brief, the Debtor cited an adversary involving Country Credit where a bankruptcy court in this judicial district rejected a § 523(a)(2)

---

[15] Test. of M. King at 8:28:15 – 8:28:25.

[16] Test. of Debtor at 10:44:40 – 10:46:00.  The Debtor received a "free check" whenever the total amount the Debtor owed for child support that month had been withheld already from previous checks that same month.

[17] Test. of M. King at 1:07:10 – 1:07:30.

claim because "Country Credit approved the loan before" the debtor "reviewed and signed the loan documents." *Johnson*, 2012 WL 930845, at \*4. In *Johnson*, the bankruptcy court noted that documents such as the Disclosure Statement, Promissory Note, and Security Agreement showed that the loan was approved before the debtor's review and signature. *Id.*

Some of the facts in the Adversary are similar to those in *Johnson*. For example, C. King testified that after completing the Application over the telephone, she called the Debtor and informed him during their conversation he had been approved for the Loan.[18] At least one important fact, however, distinguishes the Adversary from *Johnson*. In the Adversary, every document except the Application bears the same date as the Debtor's signature, whereas in *Johnson* many of the loan documents were signed by Country Credit the day before the debtor had signed them.

Country Credit argued at Trial that C. King's "approval" of the Loan was conditional — at least from its viewpoint — and, therefore, the Loan became final only after the Debtor signed the Loan documents.[19] The Court finds this argument persuasive, in large part, because of the ambiguity in the communications between Country Credit and the Debtor. For example, C. King testified that she not only told the Debtor his Loan had been "approved" but also that the Loan documents had to be signed before Country Credit would fund the Loan. Significantly, M. King and C. King both testified that they could have rejected the Application at any time before the Debtor's signature and would have denied the Loan had they known about the Debtor's child-support obligations. Accordingly, the Court finds merit in Country Credit's argument that it did

---

[18] Test. of C. King at 9:27:30 – 9:27:50.

[19] *Id.* at 9:28:38 – 9:29:30.

not intend to approve the Loan over the telephone, as the Debtor believed, but instead relied on the Loan documents in making the decision to fund the Loan.

### d.    Did the Debtor intend to deceive Country Credit?

Because a debtor rarely admits that he intended to deceive a creditor, there is hardly ever direct evidence of a deception. For this reason, an intent to deceive can be inferred from "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *Norris v. First Nat'l Bank (In re Norris)*, 70 F.3d 27, 30 n.12 (5th Cir. 1995) (citation omitted). "[A]n honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive." *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). According to Country Credit, an intent by the Debtor to deceive can be inferred from the following actions by the Debtor: (1) he provided Country Credit a "free check" rather than a check that showed payroll deductions for ongoing child-support obligations; (2) he misrepresented that he did not owe any domestic support; and (3) he misrepresented that he did not owe any child support. The Court addresses each of these actions in turn.

### (1.)    Free Check

The Court has already discussed the circumstances surrounding the "free check" that Country Credit received in response to its request for the Debtor's most current check stub. Because the Debtor complied with Country Credit's request, the Court finds that the "free check" did not show that the Debtor acted with "reckless disregard for the truth."

### (2.)   Domestic Support

Country Credit claimed that the Debtor misrepresented that he did not owe any "domestic support."  The Loan documents sometimes use "domestic support" and "child support" interchangeably.  At other times, the Loan documents use these terms as though they had different meanings.  For example, the Budget asks only for "domestic support" but the Addendum asks both for "domestic support" and "child support;" and the Signature Page mentions "child support" but not "domestic support."  If "domestic support" and "child support" were intended to refer to the same type of obligation, the Addendum would not have listed them separately.  Because of the inconsistent manner in which they are used in the Loan documents, these terms reasonably could be construed as having different meanings.

The Debtor testified that he was confused by the term "domestic support" in the Budget and interpreted it to mean alimony.[20]  He also stated that he would have understood the term "child support"[21] to have the meaning ascribed to it by Country Credit if that term had been used in all of the Loan documents instead of "domestic support."  Based on his testimony and the inconsistent use of "domestic support" and "child support," the Court finds that the Debtor reasonably believed he was correct in asserting that he did not owe any "domestic support."

### (3.)   Child Support

The only Loan documents that explicitly used the term "child support" were the Addendum and Signature Page.  The Debtor stated that he had no intent to deceive when he answered "no" to the question on the Addendum, "Do you have any family financial issues such as domestic support, alimony, child support, or any undivided community property?"  The effect

---

[20] Test. of Debtor at 10:16:20 – 10:16:40.

[21] *Id.* at 10:20:00 – 10:20:30.

of ambiguity in documents on the element of intent to deceive under §523(a)(2)(B) was considered in *First Mutual Sales Finance v. Cacciatori (In re Cacciatori)*, 465 B.R. 545 (Bankr. C.D. Cal. 2012).  In *Cacciatori,* the lender argued that a debt was excepted from discharge because the debtor included her partner's monthly contribution in her credit application under both "Applicant's Gross Salary" and "Other Sources of Income."  *Id.* at 549.  As a result, the lender counted the partner's contribution twice when calculating the debtor's ability to repay the Loan.  The bankruptcy court found that the debtor did not commit fraud because the credit application form was partially responsible for the purported misrepresentation.  *Id.* at 555.  The bankruptcy court ruled that "the credit application filled out by the sales representative is a confusing, vague and at certain points self-contradicting document."  *Id.* at 552.

Here, the confusion in the Loan documents between "domestic support" and "child support" has already been discussed.  Also, with respect to the Addendum, the Debtor was not asked whether he paid any child support but whether he had any "family financial issues . . . such as child support."  As found in *Cacciatori,* the Court finds that the language in the Addendum was vague because it suggested a problem related to child support and not just to the payment of child support.

The Debtor testified that he did not think of his child-support obligation as a "debt,"[22] although he admitted that he had incurred a substantial child-support arrearage.  There is evidence that supports the Debtor's contention.  The Debtor was not making any child support payments to cure the arrearage.  His only child-support payments were the ongoing payments garnished from his pay check each month.  M. King testified that the question in the Application

---

[22] *Id.* at 10:40:30 – 10:40:45.

about taxes meant only those taxes that were not payroll deducted.[23]   It was thus fair for the Debtor to assume that child support only meant child support that was not payroll deducted.

Country Credit had every opportunity to ask the Debtor outright, "Do you pay child support?" but did not.  Instead, every mention of "child support" is preceded by a qualifying term such as "debt" or "family financial issues."  As the court stated in *Cacciatori*, "when it is unclear what a question on a credit application is asking for, there may well be a wide range of truthful answers to the question."  *Id.* at 554.  Although the Court "recognizes the need for streamlined and expedited procedures in making a credit decision on a loan . . . it would not have been burdensome or unduly expensive" for Country Credit to have provided better-defined terms.  *Id.* at 555.  Because Country Credit did not do so, any "misinterpretation is at least partly attributable to underlying faults in the . . . form[s]."  *Id.*

While discussing the element of reasonable reliance, the Court rejected the Debtor's argument that Country Credit had not approved the Loan before the Debtor signed the Loan documents.  The Court returns to that discussion because the timing of the Loan approval — from the viewpoint of the Debtor— supports a finding that the Debtor did not intend to deceive Country Credit.  When the Debtor spoke with C. King, she told him that his Loan had been "approved."  Her precise wording is unknown, but C. King apparently failed to communicate to the Debtor the difference between the "approval" and "pre-approval" of the loan.  This ambiguity led the Debtor honestly to believe his Loan had been approved unconditionally when he appeared in Country Credit's office to sign the completed Application and other Loan documents.  To the Debtor, his signature on the Loan documents was nothing more than a

---

[23] Test. of M. King at 8:39:30 – 8:39:40.

formality. Accordingly, the Debtor could not have possessed the requisite intent to deceive Country Credit by any written statement in his Loan documents.

The myriad of issues regarding Country Credit's Loan documents and application process, as well as the Debtor's belief that his Loan had been approved already, bring into question whether there was intent to deceive or reckless disregard for the truth. In circumstances such as these, where "the question is a close one, courts generally determine that the debt is dischargeable." *Fraser v. Fraser*, 196 B.R. 371, 374 (E.D. Tex. 1996) (citation omitted). Accordingly, the Court finds that Country Credit has failed to prove intent to deceive.

## C.        Attorney's Fees & Costs

In the Debtor Brief, the Debtor seeks an award of attorney's fees and costs against Country Credit. (Debtor Br. at 16). Pursuant to § 523(d), when a creditor seeks but is denied a determination that a consumer debt is nondischargeable under § 523(a)(2), the debtor is entitled to an award for his costs and attorney's fees if the creditor's position was not "substantially justified" and no "special circumstances" would make the award unjust. *Carthage Bank v. Kirkland*, 121 B.R. 496, 499-500 (S.D. Miss. 1990).

The Debtor has not filed a fee itemization in support of his request, and Country Credit has not had an opportunity to respond to the Debtor's request. The Court, therefore, reserves the issue of attorney's fees and costs for later decision.

**Conclusion**

Based on the foregoing, the Court concludes that Country Credit failed to demonstrate that the Debtor made a misrepresentation that renders the debt owed to them nondischargeable under § 523(a)(2)(B). In addition, Country Credit abandoned its § 523(a)(2)(A) claim. Therefore, the Court finds that the Loan debt is dischargeable.

The Court will consider an award of costs and attorney fees upon proper motion filed by the Debtor under § 523(d) within fourteen (14) days of this Opinion, along with a supporting fee itemization.  Within fourteen (14) days after the Debtor files his § 523(d) motion, Country Credit may file a response.  A final judgment will not be entered by the Court until disposition of the § 523(d) motion or, if no such motion is filed, until expiration of the fourteen (14)-day deadline.

##END OF OPINION##